(No. 2433—

AUDREA DU VAL LABORATORIES, INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 13, 1935.*

HELMER HANSEN, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant submits its claim under a statement that there is no dispute concerning the facts in the present case, the matter for determination by the court being the question of whether the Secretary of State may for the purpose of computing the Annual Franchise Tax of an Illinois corporation disregard the annual reports filed by such corporation.

The claim was filed on July 13, 1934, for One Hundred Dollars as refund of a franchise tax which claimant claims to have paid in excess of the amount properly due. Claimant

alleges that it was incorporated under the laws of Illinois on October 23, 1928, with an *authorized* capital stock of Twenty-five Thousand Dollars ($25,000.00); that during that year Two Thousand Dollars ($2,000.00) worth of such capital stock was issued, which amount remained outstanding down to and including September 5, 1933, at which time four and one-half (4½) shares were surrendered for cancellation and that the capital stock remaining thereafter has been One Thousand Five Hundred Fifty Dollars ($1,550.00). That on or about October 10, 1929, claimant amended its charter by increasing the capitalization to Seventy-five Thousand Dollars ($75,000.00) consisting of Five Hundred (500) shares of preferred stock of the par value of One Hundred Dollars ($100.00) per share and Five Thousand (5,000) shares of common stock of no par value; that no part of such increased capital stock was ever issued; that during the years 1930, 1931 and 1932 claimant filed with the Secretary of State of Illinois, as required by law, its annual report and in answer to interrogatory No. 10 in each of said annual reports, claimant offered to pay a franchise tax based upon its entire issued capitalization of Two Thousand Dollars ($2,000.00); that upon each of said reports being filed, the Secretary of State mailed to claimant a notice in writing that there was due the State for the year next ensuing commencing respectively on July 1, 1930, 1931 and 1932 the sum of Thirty-seven and 50/100 Dollars ($37.50) with the statement that such franchise tax was based upon all of claimant's *authorized* capital stock of Seventy-five Thousand Dollars ($75,000.00), although the entire capital that had been issued, at no time exceeded Two Thousand Dollars ($2,000.00); that the franchise tax for each of the said three years upon a Two Thousand Dollars ($2,000.00) capital would have been *Ten Dollars* ($10.00) instead of Thirty-seven and 50/100 Dollars ($37.50); that upon receipt of such notices for said years claimant paid Thirty-seven and 50/100 Dollars ($37.50) on July 25, 1930— Forty-one and 25/100 Dollars ($41.25), (including penalty of 10%) on June 30, 1931—and Thirty-seven and 50/100 Dollars ($37.50) on June 28, 1932. Claimant avers that said payments were made in reliance upon the accuracy of said notices, and to avoid the penalties for failure to pay such franchise tax when due. Apparently the first objection that

was made by plaintiff to such payment was in a letter addressed to the Secretary of State on August 8, 1933. Claimant in its argument contends that as each of the annual reports showed that the amount of stock actually issued was at no time in excess of $2,000.00, and inasmuch as said reports were made upon the forms prescribed and furnished by the Secretary of State, and were prepared and filed for the specific purpose of informing the latter of the amount of capital stock then issued, upon which the assessment of an Annual Franchise Tax for the ensuing fiscal year should be based, that it did not lie within the province of the Secretary of State to adopt, as the basis for such annual tax, other records or data in conflict therewith. Claimant contends that the Secretary of State made a mistake and computed the franchise tax on an erroneous basis and that inasmuch as he did not have the power to assess a tax in excess of Ten Dollars for each of said years, that a refund should be allowed in the sum of Eighty-five and 25/100 Dollars ($85.25).

The reason for the assessment, on the basis stated, is clearly apparent. The Secretary of State had before him at the time of the assessment, the amendment voted by claimant increasing its capital stock,—the resolution whereof recited that the additional Seventy-five Thousand Dollars ($75,000) worth of stock was *to be issued at once* and paid in cash. This resolution and amendment were made on the 28th day of September, A. D., 1929.

If claimant recovers it must be on the basis of a "mutual mistake of fact." The Corporation Act of Illinois provides:

"The Secretary of State shall from the Annual Report filed assess a tax at the rates herein prescribed against each corporation.

"He shall from the best available information also assess such tax on all corporations organized or admitted between January 15th and March 1st."

The Secretary of State should have assessed the tax from the annual report filed by claimant. It is true the amendment to their charter, stating an immediate proposed increase, would well put the Secretary of State on inquiry, but would not in itself justify assessing a franchise tax on a basis other than that indicated by the annual report.

The original certificate of incorporation showed a proposed issue of stock in the amount of Two Thousand Dollars,

($2,000.00) and the latter amount is the one that appears in the annual reports as the amount of issued stock.

"Where there is no controversy as to the facts and it appears that a franchise tax was erroneously paid by reason of a mistake in computation an award will be allowed."

6 C. C. R. 206.
7 C. C. R. 6.

Claimant filed a correct report stating the amount of stock issued but the Secretary of State erroneously submitted a statement for fees, not based thereon. Claimant apparently accepted the statement as being based on the correct figures in the report. A mutual mistake having occurred, a refund is due claimant and an award is therefore made in the sum of $27.50 for the excess charge made for each of the years of 1930, 1931 and 1932, making a total of Eighty-two and 50/100 Dollars ($82.50).